■Chief Justice Marshall
delivered the opinion of the Court.
It being conceded on all sides, that- if the valuation made by Apperson and Bullock, March 1844, is to be taken as the basis of the settlement between the Commonwealth and Theobald vs Keeper of the Penitentiary, the accounts are correctly stated in the re poras made to the General Court, and the decree dismissing the bills filed on behalf of the Commonwealth cannot be impugned. We have considered no other questions but such as relate to the. effect which should be given to the valuation referred to.
By-the first section of an act approved on the 8th of March, 1843, it was enacted: That for the purpose of making a settlement with the present Keeper of the Penitentiary, up to the 1st of March, 1844, -when the term for which he was appointed expires, the raw material, stock, and manufactured articles on hand, shall be valued by two disinterested persons, to be selected by the Commissioners of the Sinking Fund at the expiration of the present keepers term of office; and said valuers shall take an oath-before some Justice of the Peace, faithfully and impartially to value said property ata fair wholesale cash value, and annex the value to each article thereof, and return the same to the Commissioners of the Sinking Fund, to be by them preserved, &c.” The section goes onto provide for an inventory and valuation of the tools and implements of trade in the Penitentiary, &c., &c. And directs and authorizes the Commissioners of the Sinking Fund to settle with the present keeper, and to divide the raw materials, stock, manufactured articles, debts and elibels belonging to the Penitentiary, in which the Keeper and *224 the Commonwealth are jointly interested, in such manner as to provide for the payment of the debts, and the return of the $25000, with interest, which was-.advanced to the present Keeper, when he was last appointed Keeper, and to divide the profits equally between the Commonwealth and the said Keeper, according to the law under which he became Keeper ; the said valuers are also directed to make an inventory of the machinery now on hand, and annex the value of each article, with the view-of being handed over to the new Keeper’s. On the 30th of January 1844, the Commissioners of the Sinking Fund passed an order appointing the two persons above named, to settle with the Keeper of the Penitentiary in pursuance to the above act. On the 1st of March 1844, the appointees were sworn before a Justice of the Peace, and proceeded speedily to make the inventory and valuation, which was returned to the Commissioners of the Sinking Fund, together with a report showing that according to-the directions of the act, the joint property was so disposed of as to pay 1;he $25,000 to the Commonwealth, and to set apart for her, one-half of the residue, and that in other respects they had pursued the directions of the act. In all of these proceedings Theobald acquiesced. It does not appear that the Commissioners of the Sinking Fund made any objections at the time to these acts of the valuers, or to their report. But on the contrary, they adopted them by passing over the various articles according to the inventory and valuation, to the new Keepers and taking their receipts therefor, and by maintaining the fairness, propriety, and obligatory force of the valuation, &c., some months afterwards, in their answer made to objections by the new Keepers. The Commonwealth by her Attorney General, after-wards filed these bills against the Keeper Theobald, and his securities, impeaching the valuation as too high, and 'unfairly obtained, and asking for a settlement, <fec.
The valuation of appraisers appointed by the Commission e is of the Sinking Fund under the act of the Legislature requiring them to make such ''appointed, and their acquiescence in that valuation held to be binding upon the-State.
The valuation may have been too high, and the valuers may have adopted an improper criterion for determining the wholesale cash value of the articles valued. But the Commonwealth having taken the matter into her own hands, and having provided for a valuation and settlement under the direction of her own agents, the Commissioners of the Sinking Fund, and by valuers of their selection, without even giving to the other party the usual privilege of choosing one of the valuers, and the Commissioners of the Sinking Fund having adopted and acted upon their valuation and report, and made them available in-commencing the transactions with the new Keepers, it would seem that nothing short of fraud on the part of the Keeper Theobald, or collusion between him and the valuers, or such a departure from the authority given by the act of the Legislature as should render the whole proceeding void, could authorize the Commonwealth to go behind a valuation and settlement which having been made by her own agents, must if they acted within their authority, and if there was no fraud, be regarded as substantially her own acts. The force of this conclusion is increased by the fact that this is not a mere attempt to change a paper statement or settlement of past accounts and transactions, but it is an attempt to change the terms on which a large property was actually transferred from •one to the other party at a considerable interval of time after the transfer, when the receiving party has never •offered to restore the property, but has used and to a great extent consumed it, and the other party cannot he placed in statu quo. Under such circumstances it would seem to require that a case of gross fraud or of palpable excess of authority, and of reasonable diligence in discovering and seeking redress, for the injury ■should be made out, in order to justify the relief, sought. And although laches are not imputable to the Commonwealth, yet as the interest in questio.n had been previously vested in the Commissioners of the Sinking Fund as a distinct body, the Commonwealth may be bound by their laches as well as bv their positive acts.
~The fact that the appraisers were appointed three or four the time for them affeouhe^alidity. of their appointment.
But no unfairness being imputed to the valuers, and no fraud being established against the keeper Theobald) and that ground being in fact abandoned, the valuation ¡g sought to be invalidated on the single ground that ° o o there was a departure from the authority given by the act, both as to the time of appointing the valuers and the time of making the valuation. It is contended that act only authorized the selection of the valuers ‘at the expiration’ of the then Keeper’s term, and that the appointment made on the 30th of January, about four weeks before that time, was made without authority. The Keeper’s term was to expire on the 1st of March. The object of the Legislature was to have such inventories and valuation of the articles in the Penitentiary as would furnish a proper basis for settling with liim'at the expiration of his term. And the Commissioners of the Sinking Fund to whom the State’s share in the proceeds of the Penitentiary had been previously transferred, were authorized to have the proper inventories and valuation made by two persons to be selected by them. The valuation, &c., was to be made for a purpose which indicated the expiration of the term as the proper time for making it. But there is no conceivable reason why the Commissioners should have been restricted to that precise period in the exercise of their power of selecting the valuers. On the contrary, unless they were to be restricted in the choice of persons to citizens of Frankfort, it must have been allowable for them to make and notify the selection at some convenient period before the time at which the valuation was to be made. And although the words “at the expiration of the present Keeper’s term of office,” coming immediately after the words “to be selected by the Commissioners of the Sinking Fund,” might be understood as applying to those words and thus limiting the exercise of the power of selection to that period, yet as this application of them would impose upon the power of selection a restriction as to time, not material for any object of the Statute, but rather inconsistent with the object and due exercise of the power, and as it would *227 leave unrestricted as tu time the valuation itself as- to which time was material, we think the clause “at the expiration of the present Keeper’s term, &c.,” should be referred not to the immediately preceding words conferring the power of selection, but to the next preceding member of the sentence which directs the valuation. This construction would give to the words “to be selected by the Commissioners of the Sinking Fund”' the same effect as if they were included in parenthesis, or as if they came after instead of coming before the words “ at the expiration of the present Keeper’s term-of office.” In either form the sentence would express clearly what we consider to have been the true intention of the act, that the valuation should be made at the expiration of the term by two disinterested persons to be selected by the Commissioners. This construction is also favored by the consideration that the Commissioners of the Sinking Fund had a previous interest in the whole matter, and in some sort a right subordinate to the Legislative will on the subject, to have a voice and superintendence inlhe valuation and settlement.
But further, we are of opinion that it would be giving too milch force and too precise a signification to the words “ at the expiration of the present Keepers term of office,” to say that they fix the precise moment, when even the making of the inventories and valuation-was to be either commenced or terminated. It was a-work not to be accomplished in a moment but necessarily requiring hours and days. And while the act pointed out the time at which and the purpose for which-, the valuers were intended to act, it did not intend to impose an impracticable duty. We are of opinion therefore that nothing more could have been expected or intended than that the Commissioners of the Sinking Fund, and the valuers to be selected by them, should with reasonable diligence perform their respective duties in the premises with the view and effort in good faith of having all things ready, as far as practicable according to the design of the Statute for having a settlement with the outgoing Keeper, and for the induction *228 of his successors. The object of the Legislature as indicated by the Statute and by the occasion of its enactment, was to have an authoritative or at least a reliable ascertainment through the instrumentality of the Commissioners and of valuers selected by them, of the condition, value, and species of the several articles in the Penitentiary at the time when they were to be given up by one Keeper and taken into the possession and control of his successor. And whether the Commissioners selected the valuers four days or four weeks before the time to which the valuation was to refer, or whether the valuers commenced their duties a day or two before and finished them on the day, or commenced on that day and finished a day or two afterwards, are all in our opinion alike immaterial to the validity of the appointment and of the acts done by the appointees. And while we perceive no departure from the authority and requisitions of the Statute, which should invalidate the acts in question, we recur again to the fact that the acts of the valuers were sanctioned and in effect confirmed by the Commissioners of the Sinking Fund, who were interested in the matter and had the superintendence of it, as furnishing a reason why neither they nor the Commonwealth which was represented by them should afterwards resort to technical objections as the ground of invalidating either their owm acts, or those of the valuers selected by them.
The valuers having been sworn as required, no fraud on the part of Theobald being established, and the valuation being acquiesced in by the Commission e r s of the Sinking Fund: Held that it was binding as the basis of adjustment of accounts with the Commonwealth.
If, as is probable, the valuation was too high, it was made under oath by men who standing unimpeached must be deemed competent and faithful; It was made too, without fraud or misrepresentation, or so far as appears, improper interference on the part of the Keeper Theobald. And having been received by the Commissioners without objection, and carried out in the disposition of the property between the Commonwealth and Theobald, and afterwards insisted on and enforced by the Commissioners in their dealings with the succeeding Keepers. We are of opinion that it must still be adhered to as the basis of any subsequent settlement *229 between the Commonwealth and Theobald relating to his accounts as Keeper of the Penitentiary.
M. C. Johnson for Commonwealth; Harlan, Gates, Ci'addocJc, and Lindsay, for defendants.
Wherefore the decree is affirmed.